UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

FILED
APR 23 1997
COURT
...OF ALABAMA

ENTERED
APR 24 1997

| | |
|---|---|
| ANDREW LARTIGUE,<br>    Plaintiff(s);<br><br>-vs.-<br><br>HARRY MARZETTE and UNIVERSITY<br>OF ALABAMA AT BIRMINGHAM,<br>    Defendant(s). | )<br>)<br>)<br>)  No. CV-96-P-300-S<br>)<br>)<br>)<br>) |

## OPINION

A Motion for Summary Judgment by defendants Harry Marzette and the Board of Trustees for the University of Alabama, for its division the University of Alabama at Birmingham ("UAB") was considered at a prior motion docket. For the following reasons, this motion is due to be granted.

### Facts[1]

The plaintiff, Andrew Lartigue, is a former police officer with the University of Alabama at Birmingham Police Department ("UABPD"). In 1994, Lartigue was one of a number of plaintiffs in a Fair Labor Standards Act case against UABPD. The then Chief of Police, Chief Murphy stated that Lartigue had betrayed Murphy, Marzette, and the UABPD and that he would get his just desserts for his role in the lawsuit. Marzette was Deputy Chief at this time. There is no evidence that Marzette made any comments threatening or suggesting retaliation.

Over the weekend of May 5 and 6, 1995, two money bags containing receipts from the

---

1. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the plaintiff.

Clark Theater were deposited in an evidence locker at UABPD. On Monday, the money was missing. UABPD initiated an investigation.

Lieutenant Jimmy L. Nordan conducted the investigation. Nordan began by interviewing all of the employees who had access to the building over the weekend. Lartigue was one of the employees selected for a polygraph test. Lartigue passed the exam. However, the examiner felt that Lartigue's responses were outside the norm and recommended that Lartigue and another employee be re-examined. The other employee had failed the exam. On July 12, 1994 Lartigue was notified in writing that he had been scheduled to take another polygraph exam on July 14, 1994. On July 13, Lartigue sent a memo to Nordan stating that he declined to submit to the second exam on the basis that he had already taken one. In the memo, Lartigue also stated, "I request to have an attorney present for all questioning."

As a result of his refusal to take a second exam, Lartigue was placed on administrative leave on July 21, 1995. Lartigue was suspended and then terminated on August 11, 1995. On August 9, the Birmingham News published a story that stated that Lartigue had been suspended for failure to cooperate in the investigation and that he was one of the officers on duty at the time the money was found to be missing. Prior to publication of the story, Marzette spoke with a Birmingham News reporter and did not deny the story.

At some point, in order to perform an inventory of the contents, Nordan had a UAB locksmith pick the lock on Lartigue's locker. The locksmith also testified that, at Nordon's request, he opened a locked briefcase that was inside the locker. Lartigue introduces the testimony of the locksmith to demonstrate that the search occurred on August 8, prior to Lartigue's termination. The locksmith also testified that he could be mistaken as to the date. As

2

the items were removed from the locker, they were inventoried for safekeeping. The date of the inventory is August 15, after Lartigue's termination. Lartigue claimed the items on May 6, 1996.

The plaintiff filed this case on December 28, 1995 against Marzette in his individual and official capacity and against UAB. In his complaint, the plaintiff states claims for violation of Alabama law preventing an employer from requiring an employee to submit to a polygraph unless it has a written policy and adheres to it, retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), denial of right to counsel, and libel. The plaintiff filed an amended complaint on February 11, 1997. In the amended complaint, the plaintiff stated a claim for invasion of privacy.

## Analysis

The defendants argue that the plaintiff's state law claims against UAB, a state agency, are barred by the Constitution of Alabama and that plaintiff's state law claims against Marzette in his official capacity are barred because the state is the real party in interest. The defendants contend that the plaintiffs' FLSA claim of retaliation fails because the plaintiff was terminated for an unrelated incident. The defendants contend that plaintiff was not denied counsel at any time and that Marzette did not libel the plaintiff because he made no statement or, if he made a statement, the facts published were true. The defendants argue that opening the plaintiff's locker did not violate his right to privacy because it was performed solely to inventory the contents.

The plaintiff argues that the defendants incorporated the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. §§ 2001-2009, into its polygraph policy, that they violated the EPPA when they administered his exam, and that therefore they violated state law. The plaintiff contends that the state and Marzette are not entirely immune from suit. The plaintiff also contends

3

that he has presented evidence of retaliation in the comments by the previous chief, Chief Murphy. The plaintiff argues that his right to privacy was violated by the entry of the locker and the briefcase.

I. Polygraph

The University of Alabama Board of Trustees, which encompasses UAB, is an agency of the state of Alabama and is immune from suit. *Hutchinson v. Board of Trustees of the University of Alabama*, 256 So. 2d 281, 284 (Ala. 1971). State officers and employees are also immune from suit in their official capacities and individually when the action is in effect one against the state. *Alabama State Docks v. Saxon*, 631 So. 2d 943, 945-46 (Ala. 1994). The plaintiff contends that the defendants violated Alabama case law prohibiting employers from subjecting employees to polygraph tests unless they have a written polygraph policy and adhere to that policy. *Hood v. Alabama State Personnel Board*, 516 So. 2d 680, 682 (Ala. Civ. App. 1987). This rule is directed at employers. Therefore, this claim is essentially one against Lartigue's employer, the state. Consequently, both defendants are immune from suit and are entitled to summary judgment on the plaintiff's claims of state law polygraph violations. To the extent that the plaintiff claims that UABPD violated the EPPA directly, the defendants are entitled to summary judgment because the state is a public employer immune from suit under the EPPA. 29 U.S.C. § 2006(a).

II. FLSA Retaliation

The FLSA makes it unlawful to discharge or discriminate against any employee because the employee was involved in FLSA action. 29 U.S.C. § 15(a)(3). Lartigue has presented no evidence that his termination was in retaliation for his involvement in the FLSA action. Lartigue

4

points to a comment by previous chief Murphy to the effect that Lartigue had betrayed the Murphy, Marzette (then assistant chief) and the UABPD and that he would get his just desserts. Lartigue can point to no evidence, however, that Marzette ever made any threats or comments regarding Lartigue's involvement in the FLSA suit. As well, Lartigue has presented no evidence to call into question the UABPD's stated reason for his termination. Therefore, the defendants are entitled to summary judgment on the plaintiff's claims of retaliation in violation of FLSA.

III.   Libel

Because the state and its officers and employees are immune from suit when the action is in essence against the state, *see Alabama State Docks*, 631 So. 2d at 945-46, the only libel claim possible is against Marzette in his individual capacity. The primary element of a defamation claim is the existence of a false statement. *Tidwell v. Winn-Dixie, Inc.*, 502 So. 2d 747, 748 (Ala. 1987). Lartigue has not demonstrated either that Marzette made a statement or that anything published or stated was untrue. Therefore, the defendants are due to be granted summary judgment on the plaintiff's libel claim.

IV.   Denial of Counsel

Because the plaintiff has presented no evidence that either Marzette or UABPD denied him counsel at any time, the defendants are entitled to summary judgment on the plaintiff's claims of denial of counsel.

V.   Violation of Right to Privacy

Under the Eleventh Amendment, the state is immune from suit in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1978). Marzette, to the extent sued in his official capacity for a violation of the constitution, is immune from suit for all except prospective injunctive relief.

5

*Id.* To the extent Marzette is sued in his individual capacity, the plaintiff has introduced no evidence that Marzette was in any way personally involved in the opening of the plaintiff's locker or briefcase, and thus Marzette is entitled to summary judgment on the plaintiff's claim of violation of his right to privacy. Therefore, the only claim remaining is against Marzette in his official capacity for prospective injunctive relief. Because it appears that the plaintiff seeks only monetary compensatory and punitive damages as to this claim, Marzette is entitled to summary judgment of the plaintiff's entire claim for violation of his right to privacy.

Dated: April 23, 1997

Chief Judge Sam C. Pointer, Jr.

Service List:
  Mr. George C. Longshore
  Mr. W. L. Longshore
  Mr. Edward J. Kennedy, III